UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARK A. RICHARDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:14-cv-00707-SEB-DKL |
| | ) | |
| BART'S CAR STORE, INC., | ) | |
| COMMUNITYWIDE FEDERAL CREDIT | ) | |
| UNION, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| COMMUNITYWIDE FEDERAL CREDIT | ) | |
| UNION, | ) | |
| | ) | |
| Cross Claimant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BART'S CAR STORE, INC., | ) | |
| | ) | |
| Cross Defendant. | ) | |
| | ) | |

**ORDER ON DEFENDANT BART'S CAR STORE, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

This matter comes before us on Defendant Bart's Car Store, Inc.'s Motion to Compel Arbitration and Stay Proceedings [Dkt. No. 33]. The Motion was fully briefed by the parties; however, on November 5, 2014, Plaintiff sought leave to file a surreply [Dkt. No. 51] to which Defendant objected. For the reasons set forth below, Defendant's Motion

to Compel Arbitration and Stay Proceedings [Dkt. No. 33] is DENIED WITHOUT PREJUDICE. Plaintiff's Motion for Leave to File Surrpely [Dkt. No. 51] is GRANTED.[1]

**Factual and Procedural Background**

Plaintiff Mark Richardson purchased a yellow 2006 Dodge Charger from Bart's Car Store, Inc. on August 1, 2012. Mr. Richardson and Bart's Car Store entered into a contract, a copy of which is attached as Exhibit A to Defendant's Motion to Compel Arbitration. [Dkt. No. 33-1.] After purchasing the Dodge Charger, Mr. Richardson learned that prior to his purchase the vehicle had been stolen, the Vehicle Identification Number ("VIN") changed, and the odometer did not represent the vehicle's actual mileage. After contacting the Indiana State Police, the vehicle was impounded. Mr. Richardson no longer possesses the vehicle.

On May 7, 2014, Mr. Richardson filed a Complaint against Bart's Car Store and Communitywide Federal Credit Union (the assignee of the retail installment contract between Mr. Richardson and Bart's Car Store[2]). Mr. Richardson asserts claims against Bart's Car Store pursuant to:

· Motor Vehicle Information and Cost Savings Act (49 U.S.C. § 32701)

---

[1] Defendant's brief in support of its Motion to Compel included a single paragraph related to the amount in controversy (which Defendant subsequently pegged in its reply brief to be approximately $12,000 less than the amount in its opening brief) and one paragraph characterizing Plaintiff's claims with respect to the arbitration agreement. [Dkt. No. 34 at 6.] In the interest of fairness and to give Plaintiff a full and fair opportunity to respond, we will permit the filing of Plaintiff's surreply. *See, e.g.*, *University Healthsystem Consortium v. United Health Group, Inc.*, Case No. 13CV6683, 2014 WL 4685753 at *3 (N.D. Ill. Sept. 19, 2014).

[2] The claim against Communitywide Federal Credit Union is based on derivative liability. Communitywide has requested that the claims against it be stayed pending any compelled arbitration. No party objected to Communitywide's request and Plaintiff agrees that arbitration will not resolve his claims against Communitywide. [*See* Dkt. No. 48 at 2, n.1.]

- Indiana Crime Victim's Relief Act (Ind. Code § 34-24-3-1)
- Fraud
- Constructive Fraud
- Magnuson-Moss Warranty Act – Breach of Express Warranty
- Magnuson-Moss Warranty Act – Breach of Implied Warranty

[*See* Dkt. No. 1.]

Defendant Bart's Car Store moved to compel arbitration and stay the litigation. Defendant's motion is based on an arbitration provision in the contract between Mr. Richardson and Bart's Car Store. That agreement provides, in part:

> Buyer and Seller agree that in the event either party defaults in the performance of the obligations of such party under the purchase agreement, or in the event there is a dispute between buyer and seller with respect to their obligations arising out of the purchase and sale of the automobile(s) – automobile meaning any type of land motor vehicle, that does not exceed the sum of $45,000, the dispute shall be submitted to the Better Business Bureau ("BBB") for binding arbitration.
>
> The following terms and conditions apply:
>
> A. These arbitration provisions are only to apply to disputes arising out of the terms of the purchase agreement and the responsibilities of the parties described therein. This arbitration agreement is not meant to encompass claims such as, but not limited to, vandalism, larceny, robbery, terrorism, collision, forgery, identity theft, personal injury, medical expenses, or damage to other property of either party such as Seller's premises, or damage resulting from forces of nature such as, but not limited to, flood or tornado.
>
> . . .

[Dkt. No. 33-1 at p. 2.] Defendant contends that the value of Plaintiff's claims does not exceed $45,000 and reflect disputes between buyer and seller with respect to their obligations arising out of the purchase and sale of the automobile.[3] As a result, Defendant

---

[3] Defendant presents two issues in its Motion to Compel to which Plaintiff did not respond or object. First, Defendant addresses the issue of waiver and its contention that it did not waive

3

seeks to compel arbitration pursuant to the parties' agreement. Plaintiff rejoins that the amount of his claim greatly exceeds $45,000 and that his claims are of the kind excluded from the agreement to arbitrate. He requests that the Court deny Defendant's motion.

## Legal Analysis

**A.     The Enforceability of Arbitration Agreements.**

Originally enacted in 1925, the Federal Arbitration Act ("FAA") provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable. . . ." 9 U.S.C. § 2. To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 662 (7th Cir. 2002).

Whether an issue is referable to arbitration, such that a stay and/or an order to compel arbitration is appropriate, is a question of contract interpretation, for "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Schacht v. Beacon Ins. Co.*, 742 F.2d 386, 390 (7th Cir. 1984). Yet, in interpreting the construction of the contract language, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). This is due to the overriding federal policy favoring arbitration. *Id.* at 24 (noting the "liberal federal policy favoring arbitration

---

the right to seek arbitration. [Dkt. No. 34 at 3, 5-6.] Plaintiff does not argue that Defendant waived its rights, and as a result we need not reach this issue. Second, Defendant addresses whether Plaintiff agreed to the arbitration provision. [*Id.* at 5.] Again, Plaintiff does not contend in his response that he did not agree to arbitrate claims that were subject to the arbitration provision, and thus we need not reach this issue either.

agreements"). Thus, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Schacht*, 742 F.2d at 390 (citations omitted).

**B.      The Nature of Plaintiff's Claims.**

The arbitration agreement at issue provides in part that "[t]hese arbitration provisions are only to apply to disputes *arising out of* the terms of the purchase agreement and the responsibilities of the parties described therein." [Dkt. No. 33-1 (emphasis added).] The Seventh Circuit has repeatedly construed the phrases "arising out of" and "relating to" in arbitration agreements very broadly. *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). ("[W]e read both 'arising out of' and 'relating to' broadly.") (citing *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999)). It has also emphasized that the use of such broad language raises a presumption of arbitrability, requiring that any doubts regarding whether the dispute is arbitrable be resolved in favor of arbitration. *Id.* at 1033–34. Furthermore, where the arbitration provision is broad, as it is here, only an "'express provision excluding a particular grievance from arbitration . . . [or] the most forceful evidence of a purpose to exclude the claim from arbitration' can keep the claim from arbitration." *Exelon Generation Co., LLC v. Local 15, Intern. Broth. of Elec. Workers, AFL-CIO*, 540 F.3d 640, 646 (7th Cir. 2008) (citing *AT & T Techs. Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 584-85 (1960))).

5

Plaintiff argues that the arbitration agreement does not apply to intentional torts. [Dkt. No. 48 at 6-9 ("The parties' alleged arbitration agreement also does not apply to claims alleging intentional conduct.").] Plaintiff notes that the arbitration agreement discusses "defaults" and "breaches" and "disputes arising out of the terms of the purchase agreement" as breach-of-contract type claims to be arbitrated and excludes intentional torts from mandatory arbitration, such as vandalism, larceny, robbery, terrorism, collision, forgery, identity theft, personal injury, medical expenses, etc. As a result, according to Plaintiff, his claims are beyond the purview of the arbitration agreement.

We disagree. A plain reading of the arbitration agreement shows that the list of claims excluded from mandatory arbitration are those that do *not* "aris[e] out of the terms of the purchase agreement and the responsibilities of the parties described therein." [Dkt. No. 33-1.] None of the enumerated claims excluded from arbitration can be said to arise out of the terms of the purchase agreement or the parties' responsibilities. For example, vandalism, larceny, robbery, and terrorism have nothing to do with Bart's agreement to sell and Plaintiff's agreement to buy the vehicle.

The language used by Plaintiff in his Complaint is persuasive evidence that Plaintiff's claims fall within the parties' broad agreement to arbitrate any "dispute between buyer and seller with respect to their obligations arising out of the purchase and sale of the automobile(s)". Plaintiff repeatedly references the "selling of" and "purchase of" the vehicle as the basis for his claims. For example:

56. *In selling* the Stolen Charger to Plaintiff . . .

57. *In selling* the Stolen Charger to Plaintiff . . .

6

> 64. The foregoing representations and omissions were material to Plaintiff's *decision to purchase* the Stolen Charger, and Plaintiff *relied upon* the representations and omissions *when he decided to purchase it.*
>
> 72. *In selling* the Stolen Charger *to Plaintiff*, . . . .
>
> 75. Bart's warranted to Plaintiff that it would provide Plaintiff good title to the Stolen Charger.
>
> 78. Plaintiff has been damaged by Bart's' failure to abide by the *terms of its written warranty* to provide Plaintiff good title to the Stolen Charger.

[Dkt. No. 1 (emphasis added).] Plaintiff's claim related to the Motor Vehicle Information and Cost Savings Act (the "Odometer Act") also contains allegations that arise out of Bart's obligations with respect to the sale of the vehicle. In paragraph 50, Plaintiff complains that Bart's made false statements and failed to disclose information related to the actual mileage and odometer inaccuracies of the vehicle. [Dkt. No. 1 at ¶ 50.] These statements and omissions are alleged to have occurred during the process of Mr. Richardson purchasing the vehicle. [*Id.* at ¶ 24 ("*At the time of sale*, Bart's represented to Plaintiff in all sale documents that the actual mileage on the Stolen Charger was 80,735.") (emphasis added).]

Each of these allegations illustrates that Mr. Richardson's dispute with Bart's Car Store *arises out of* the purchase and sale of the vehicle. As Defendant notes, "each and every claim Plaintiff asserts arises from Defendant's obligation to tender a vehicle with good title." [Dkt. No. 50 at 4.] Plaintiff's claims are not unrelated to Bart's obligations with respect to the sale of the vehicle. Rather, Plaintiff's complaint that Bart's failed to fulfill its obligations related directly to the sale of the vehicle. These claims are part of the agreement to arbitrate.

The arbitration agreement does not exclude only intentional torts from arbitration as Plaintiff posits. It also excludes certain damages such as "personal injury" and "medical expenses" and "damage to other property of either party" – all of which are unrelated to the terms of the purchase agreement. Contrary to Plaintiff's characterization, the agreement to arbitrate does not generally or specifically exclude all intentional torts.

Additionally, Plaintiff's claims are not identified in the list of claims excluded from arbitration nor are they of the kind enumerated in the arbitration exclusion sentence. For example, Plaintiff's Magnuson-Moss claims allege that Defendant did not provide good title in the sale. These claims are unlike any listed in the arbitration agreement. The same is true of Plaintiff's claim for fraud and constructive fraud – that Defendant misrepresented information about the vehicle and breached its duty of good faith and fair dealing during the sale. Plaintiff's claims are not like vandalism, larceny, robbery, forgery, personal injury, etc.

Plaintiff contends that we should consider the principle of contract interpretation that "ambiguity is construed against the party [that] drafted the contract." [Dkt. No. 48 at 8 (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62-63 (1995)).] This principle might apply if Plaintiff had identified an ambiguity in the contract. "Where terms of a contract are clear and unambiguous, we will apply the plain and ordinary meaning of the terms and enforce the contract according to its terms." *John M. Abbott, LLC v. Lake City Bank*, 14 N.E.3d 53, 56 (Ind. Ct. App. 2014) (citing *Claire's Boutiques, Inc. v. Brownsburg Station Partners LLC*, 997 N.E.2d 1093, 1098 (Ind. Ct. App. 2013)). The issue before us is the *scope* of the arbitration agreement. Even if an ambiguity exists, it is

resolved in favor of arbitration. *See Druco Rests., Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 781 (7th Cir. 2014) ("[T]he FAA's policy in favor of arbitration applies when determining the *scope* of an agreement to arbitrate, . . . ."); *Mastrobuono*, 514 U.S. at 62-63 (applying the common-law contract rule of construing ambiguities against the drafter as to the ambiguity related to choice or law for punitive damages purposes and not whether claims were arbitrable).

The parties' arbitration agreement includes the broad language "arising out of the terms of the purchase agreement and the responsibilities of the parties described therein" and contains no express provision excluding Plaintiff's claims from arbitration or the most forceful evidence of a purpose to exclude Plaintiff's claims from arbitration. Consequently, we conclude that Plaintiff's claims are included within the parties' agreement to arbitrate.[4] We next consider whether the amount is controversy excludes Plaintiff's claims from arbitration.

**C.    Agreement to Arbitrate Claims Less Than $45,000.**

The parties' agreement to arbitrate relates only to claims in which the total amount in controversy does not exceed the sum of $45,000. [Dkt. No. 33-1 at p. 2.] Both parties agree that claims over $45,000 are not subject to arbitration; however, they disagree as to whether Plaintiff's claims reach that threshold. Defendant argues that Plaintiff's claims do

---

[4] Our determination gives consideration and meaning to the phrase "with respect to their obligations" as Plaintiff urges [Dkt. No. 48 at 7-8]. No one phrase is to be read in isolation. The parties agreed to resolve any "dispute[s] between buyer and seller with regard to their obligations arising out of the purchase and sale of the automobile . . . ." [Dkt. No. 33-1.] The parties agreed to a broad arbitration provision and included very specific exclusions, none of which include the claims asserted by Plaintiff in this case.

9

not exceed $45,000 and Plaintiff contends his claims do exceed $45,000. The parties agree that the Court determines the amount in controversy. [Dkt. No. 50 at 2 ("Plaintiff argues that the Court should determine arbitrability in this action; and Bart's agrees."); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (holding that unless the parties agree that the arbitrator determines arbitrability of claims, that determination is left for the court).]

Plaintiff argues that the amount of his actual damages is the $17,500 he paid for the vehicle less the value of the vehicle ($0). Thus, it is Plaintiff's contention that his actual damages are at a minimum $17,500 and when his actual damages are trebled pursuant to the Odometer Act [Dkt. No. 48 at 4-5], his damages are $52,500, thus exceeding the $45,000 threshold. Defendant maintains both that Plaintiff's damages are "at best just over $13,000" [Dkt. No. 34 at 6][5] and that "his 'actual' damages [are] $9,372.91", which amount represents the installment payments made by Plaintiff on the vehicle installment contract between purchase date and the date the vehicle was impounded [Dkt. No. 50 at 3]. Trebling those actual damages, according to Defendant, puts Plaintiff's damages at $28,118.73, far short of the $45,000 threshold to avoid arbitration.

It is "a fundamental rule of damages [] that a party injured by a breach of contract is limited in his recovery to the loss actually suffered." *Indiana Tri-City Plaza Bowl, Inc.*

---

[5] Defendant does not explain its rationale for Plaintiff's alleged actual loss of $13,000. The Court observes that in ¶ 19 of Plaintiff's Complaint, the "total balance due" on the purchase of Plaintiff's vehicle is $13,068; however, this amount does not take into account the cash down payment made Plaintiff.

*v. Estate of Glueck*, 422 N.E.2d 670, 678 (Ind. Ct. App. 1981). "[T]he injured party may not be placed in a better position than he would have enjoyed if the breach had not occurred." *Sanchez v. Benkie*, 799 N.E.2d 1099, 1102 (Ind. Ct. App. 2003). Plaintiff's actual damages claim is unclear because no substantiation for such an amount has been presented reflecting what Plaintiff lost as a result of the transaction with Bart's Car Store.

Plaintiff states in summary fashion that he "paid $17,500" for a vehicle which had no value to him. [Dkt. No. 48 at 4.] Defendant states in summary fashion that Plaintiff "parted with" $9,372.91, which represents his monthly payment of $257.23 for the 17 months the vehicle was in Mr. Richardson's possession. [Dkt. No. 50 at 2-3.] Neither party has provided us with evidence to show that Mr. Richardson either paid his loan in full and thus has "parted with" or paid $17,500 (although if this were the case, he would have paid interest on the loan not included in the $17,500 purchase price) or that he has paid only $9,372.91 for the vehicle.[6] Additionally, although Plaintiff claims that he also invested in mechanical repairs and new tires for the vehicle, he has provided no detail as to the amount of those repairs and improvements.

Plaintiff attempts to arrive at an amount in controversy exceeding the $45,000 threshold by arguing that his actual damages are trebled both by the Odometer Act and common law fraud punitive damages. However, Plaintiff's calculation results in a duplicative measure of damages. [*See* Dkt. No. 51.1 at 3 (arguing for punitive damages

---

[6] Although both parties discuss *Stepp v. Duffy*, 654 N.E.2d 767 (Ind. Ct. App. 1995), this case does not provide guidance here. *Stepp*, an Indiana case applying the federal Odometer Act, appears to be based on a cash purchase of a vehicle – not a case such as this where the Plaintiff financed the majority of the vehicle's purchase price.

11

based on a common law claim for fraud).] The trebling of actual damages in the Odometer Act *is* punitive damages. *Glover v. General Motors Corp.*, 959 F. Supp. 332 (W.D. Va. 1997). The court in *Glover* considered this issue and found that the trebling of damages is a "statutory enhancement of actual damages [which] serves the same function as common law punitive damages, which is to punish the wrongdoer and deter similar conduct in the future." *Id.* at 334 (citations omitted). The *Glover* court opined that "[t]o allow treble damages and common law punitive damages would grant a duplicative remedy, a result which Congress certainly did not intend." *Id.* (citations omitted). Consequently, Plaintiff cannot recover both punitive damages *and* Odometer Act treble damages. The amount in controversy cannot include duplicative punitive/trebled damages.

Plaintiff also seeks punitive damages based on his fraud claim. [Dkt. No. 48 at 5.] Plaintiff argues that Indiana Code § 34-51-3-4 allows as punitive damages the trebling of actual damages of $50,000, whichever is greater. As a result, the $50,000 would exceed the $45,000 threshold for arbitration. We cannot conclude that Plaintiff's punitive damages request as a result of his fraud claim exempts his claims from arbitration. Plaintiff mentions in his briefing the same $17,500 in damages for all of his claims. It is well settled that "a claimant who brings both a breach of contract and a fraud claim must prove that (1) the breaching party committed the separate and independent tort of fraud; and (2) the fraud resulting in injury distinct from that resulting from the breach." *America's Directories Inc., Inc. v. Stellhorn One Hour Photo, Inc.*, 833 N.E.2d 1059, 1067 (Ind. Ct. App. 2005). The only damages Plaintiff identifies for both his statutory, common law, and breach of

12

contract (count E – Breach of Express Warranty) is $17,500.[7]  No evidence has been presented of separate fraud damages.  As a result, we lack a basis on which to definitively hold that the amount in controversy in this complaint exceeds $45,000.

Because the parties have submitted no basis for us to conclusively determine whether the amount in controversy is less than or greater than $45,000, we deny Defendant's Motion to Compel Arbitration without prejudice.  As discovery proceeds, if evidence is adduced to show the amount Plaintiff actually paid for the vehicle and any repairs and improvements made to the vehicle, or any fraud damages different from the breach of contract damages, would not exceed the $45,000 threshold, arbitration may be appropriate.

## Conclusion

Although the subject of Plaintiff's claims falls within those the parties agreed to arbitrate, we are unable to determine the amount in controversy due to a lack of evidence.  As a result, Defendant's Motion to Compel Arbitration and Stay Proceedings [Dkt. No. 33] is DENIED WITHOUT PREJUDICE.  Further, Plaintiff's Motion to File Surreply [Dkt. No. 51] is GRANTED and Docket Number 51-1 is DEEMED FILED.

Date: 12/15/2014

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[7] Plaintiff states that his complaint includes claims for "contractual liability."  [Dkt. No. 1 at ¶ 2.]

13

Distribution:

Joshua A. Atkinson
HUNT SUEDHOFF & KALAMAROS LLP-Fort Wayne
jatkinson@hsk-law.com

James J. Shea
HUNT SUEDHOFF KALAMAROS
jshea@hsk-law.com

Linda A. Polley
HUNT SUEDHOFF KALAMAROS LLP
lpolley@hsk-law.com

Robert E. Duff
INDIANA CONSUMER LAW GROUP
robert@robertdufflaw.com

Charles S. Leone
LEONE HALPIN LLP
cleone@leonehalpin.com

Ryan R. Frasher
RYAN FRASHER P.C.
rfrasher@frasherlaw.com

James P. Buchholz
TOURKOW, CRELL, ROSENBLATT & JOHNSTON
jbuchholz@tcrjlaw.com